# Antram *versus* Thorndell.

1.  Moore having a subscription list of scholars to a Normal School gave it
to Antram to collect, and drew an order on Antram in favor of Thorndell,
which Antram accepted payable " out of the first money collected." Antram
left the list with Moore who collected the money. In a suit by the payee
against Antram, *Held*, the mere leaving the list was not authority to Moore
to collect and discharge the subscribers.

2.  There was evidence that Antram was to hold the list, the subscribers
come to him and pay ; that he did not know he had authority to collect nor
that he was accountable on the list. The court charged that Antram was
liable for Moore's default. *Held* to be error, the question was for the jury.

3.  Evidence that when the list was left with Antram by Moore, it was
understood between them, that Antram was not to collect the money, but it
was to be paid to him by the subscribers, was admissible.

4.  Antram was treasurer of the school ; for mere neglect in not collecting
the subscriptions he was liable to the association and not the payee.

November 18th 1873.   Before READ, C. J., AGNEW, SHARSWOOD,
WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Fayette county :* No.
61, to October and November Term 1874.

This was an action of assumpsit, brought February 4th 1870,
by William Thorndell against Caleb Antram.   The cause of action
was the following paper :—

" Mr. Caleb Antram, Treasurer of the Fayette County Normal
School—Sir : Please pay to Wm. Thorndell the sum of two
hundred and sixty-eight dollars, out of the money collected from
the students of the above school, and deduct the same from my
account.                                            B. M. MOORE.

Uniontown, April 1st 1867."

" I will pay the above bill out of the first money collected.

CALEB ANTRAM,
Treasurer of Fayette County Normal School."

The case was tried March 25th 1873, before Gilmore, P. J.

After giving the paper in evidence, the plaintiff testified : The
consideration of the order was to pay Moore's boarding account
with plaintiff; all the payments from students were made soon

[Antram v. Thorndell.]

after the order was given; plaintiff received but $13 or $14; Moore was about commencing to teach.

The plaintiff called defendant, who said:—

"I never collected any money from the students; I never tried to collect any, and did not know that I had authority to collect; two dollars were paid into my hands by one of the subscribers; the subscribers were to come to my house and pay it; all I had to do was to receive it; I had the subscription list; one-half of the subscription was to be paid in advance; one-half of the list would have paid Mr. Thorndell's bill; I accepted the order before the advance-money was paid; I suppose most of the subscribers were able to pay; I believe that I destroyed the subscription list when I supposed it was all paid; the subscription paper was in my hands from the beginning of the school; before any of the subscribers had paid; I destroyed the subscription paper after the school was closed; I did not know that it had all been paid, but supposed it had; I did not know that I was accountable in any way; it was two years, perhaps more, after the school closed that I destroyed the subscription list; I never agreed to collect the subscription, but only to receive it and pay out; the list of subscribers handed to me was a list copied by Moore; it purported to be a copy of the original; I accepted the order before the subscription list was given to me; he, Moore, gave me this in order that the subscribers might pay into my hands."

The plaintiff having closed, defendant by his counsel offered to prove that at the time he accepted Moore's order that it was understood between defendant and Moore that defendant was not to collect the money, but that it was to be paid to him by the subscribers.

The offer was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

The following are points of defendant with the answers:—

1. The acceptance by defendant of Moore's order in favor of the plaintiff, operates only as an equitable transfer of funds belonging to Moore, that came into defendant's hands after the acceptance by him of said order.

Answer: "This is the primâ facie effect of the obligation created by the acceptance, but if the defendant might have received the money from the subscribers, and did not because he allowed the obligation of the subscribers to remain in the hands of Moore, who Antram says he believes received the subscription money, it would be otherwise."

4. The legal effect of defendant's endorsement on Moore's order is that of an acceptance "when in funds," and it is incumbent on the plaintiff to show that funds came to defendant's hands which were not paid to plaintiff before there can be a recovery in this action.

[Antram *v.* Thorndell.]

Answered in the general charge.

The court charged the jury that " the defendant will be bound to pay the full amount of his acceptance if the jury are satisfied that the subscription paper was sufficient to pay the same. If Antram left the original subscription paper in the hands of Moore, who received the money on the same, it was the fault and neglect of Antram. He should have procured the possession of the original subscription—this would have authorized him alone to receipt; but he committed this power to the hands of Moore, and if there has been a loss he must look to Moore. If the evidence is believed it is plain that it was through the act or omission of the defendant that the money was not paid to him."

The verdict was for the plaintiff for $304.82.

The defendant took out a writ of error.

He assigned for error, the rejection of his offer of evidence, the answers to his points and the charge of the court.

*A. D. Boyd* and *T. B. Searight,* for plaintiff in error.—The defendant was not bound by his acceptance to pay at all events, but only when in funds from the subscriptions; that he was, plaintiff was bound to show: Story on Bills, sect. 74; Davis *v.* McGrath, 10 Barr 171; Atkinson *v.* Manks, 1 Cowen 707; Maber *v.* Massias, 2 Wm. Blacks. 1072.

*G. W. K. Minor,* for defendant in error.

The opinion of the court was delivered, January 5th 1874, by

SHARSWOOD, J.—We think that this case was erroneously taken from the jury. The order was drawn upon a fund and was to be paid out of the moneys collected from the students of the Fayette County Normal School, and the acceptance was special to pay the bill out of the first money collected. It was agreed that no money had actually come to the hands of the defendant below except a very small amount which had been paid to the plaintiff. The contention was, however, that the defendant had authorized Moore to make the collection for him, and that whatever money had been received by him was to be considered as in the hands of Antram. So the learned judge charged the jury, instructing them that " if Antram left the original subscription paper in the hands of Moore, who received the money on the same, it was the fault and neglect of Antram. He should have procured the possession of the original subscription—this would have authorized him alone to receipt; but he committed this power to the hands of Moore, and if there has been a loss he must look to Moore." The mere leaving of the original subscription paper in the hands of Moore was not of itself an authority to collect the money and discharge the subscribers. It would be evidence but for the jury. Antram

[Antram v. Thorndell.]

testified : " The subscribers were to come to my house and pay it; all I had to do was to receive it. The list of subscribers handed to me was a list copied by Moore; it purported to be a copy of the original." Whatever inference of authority might be drawn from Antram's leaving the original list in the hands of Moore would seem to be rebutted by this statement. For the same reason that the question in the cause was purely one of fact, the evidence offered by the defendant ought to have been received. It was that at the time he accepted Moore's order it was understood between him and Moore that he (Antram) was not to collect the money, but that it was to be paid to him by the subscribers. This certainly bore directly upon Moore's authority to receive the money for the defendant. It tended to sustain the position that Moore was to send the subscribers to Antram, and this was the design of having the original list in his hands. It would undoubtedly have been safer and more regular for Moore to have kept the copy and handed Antram the original. Moore seems to have been the teacher of the school and may have been instrumental in procuring the subscriptions. The list may therefore have been left with him to procure other subscribers. But all this was for the jury. It is too clear for argument that for mere neglect of his duty as treasurer, if thereby the money due upon the subscriptions was lost to the school, the defendant was not liable to Thorndell, but to the association which had resolved to establish " The Fayette County Normal School," and elected the defendant their treasurer.

Judgment reversed, and a *venire facias de novo* awarded.